IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02985-WJM-MJW

ROY ALBERT KAHN,

    Applicant,

v.

CHARLES DANIELS,

    Respondent.

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MICHAEL J. WATANABE, United States Magistrate Judge

    This matter is before the Court pursuant to an Order of Reference to United States Magistrate Judge issued on January 12, 2012, by District Judge William J. Martinez (Doc. No. 13).

    Applicant, Roy Albert Kahn, is a federal prisoner incarcerated at the United States Penitentiary in Florence, Colorado. Before the Court for a report and recommendation is the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 filed by Applicant on November 16, 2011 (hereinafter "the Application") (Doc. No. 1). Respondent filed a Return to Application for Writ of Habeas Corpus ("Answer") on January 18, 2012 (Doc. No. 16). Applicant filed a Reply on February 13, 2012 (Doc. No. 22). The Court has considered the Application, the Answer and the Reply as well as applicable Federal Rules of Civil Procedure, statutes, and case law and has taken judicial notice of the Court's file. The Court now being fully informed makes the following findings, conclusions of law, and recommendation. Because the Applicant is

proceeding without counsel, the Court has "construe[d] his pleadings liberally, but [has not] act[ed] as his advocate." *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

**I. Background**

Applicant is currently serving a 110-month sentence imposed in 2004 by the United States District Court for the Southern District of Florida. *See* Answer at Ex. A, p. 2. He was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *Id.* Applicant has a projected release date of September 12, 2012, via good conduct time release. *Id.*

On October 19, 2010, Applicant received an incident report for Code 108, possession of a hazardous tool while incarcerated at the USP Victorville in Adelanto, California. *Id.* at 3. The incident report alleged that on October 18, 2010, the correctional officer found a cellular phone that had been broken into four pieces in the toilet of Applicant's cell.[1] *Id.*

On October 19, 2010, Applicant was notified of an impending hearing before the Unit Disciplinary Committee (UDC). *Id.* On October 21, 2010, the UDC conducted a hearing where it decided to refer the incident report to the Disciplinary Hearing Officer (DHO) for further processing. *Id.* Applicant was provided with a copy of the Notice of Discipline before the DHO and a written notice of his rights before the DHO on October 21, 2010. *Id.*

---

[1]Code 108 of the Prohibited Acts Code prohibits "[p]ossession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13. BOP Code 108 was amended in June of 2010 to include portable telephones on the list of specific examples of hazardous tools. 28 C.F.R. § 541.3 (2011).

On October 27, 2010, the DHO conducted a hearing with respect to the incident report. *Id.* The DHO concluded that Applicant did commit the prohibited act of Code 108, Possession of a Hazardous Tool. *Id.* As a result of the finding, Applicant was sanctioned to thirty days of disciplinary segregation, six months loss of commissary privileges, one year loss of phone privileges, forty days disallowance of good conduct time, and forty days forfeiture of non-vested good conduct time. *Id.* at 5.

## II.  Application

Applicant initiated this action by filing a *pro se* 28 U.S.C. § 2241 Application on November 16, 2011 (Doc. No. 1). Applicant asserts that his due process rights were violated in the disciplinary hearing, and he seeks an order expunging the incident report, and restoring his good time credits. After being ordered to file a preliminary response, Respondent informed the Court that it would not raise the affirmative defense of exhaustion of administrative remedies (Doc. No. 8). The case was drawn to a district judge and a magistrate judge on December 28, 2011.

## III.  Legal Standard

A section 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir.1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A motion pursuant to § 2241 generally . . . [includes] such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Hernandez v. Davis*, No.

07–cv–02406, 2008 WL 2955856, at *7 (D. Colo. July 30, 1998) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996).  Here, Applicant correctly filed the Application challenging the disciplinary hearing in the District of Colorado, where he was incarcerated at the time of filing.

## IV. Analysis

Applicant alleges that the disciplinary proceedings violated his Fifth Amendment right to due process because: (1) the DHO's finding was not supported by sufficient evidence; (2) the DHO improperly relied on false evidence; (3) the DHO failed to consider Applicant's statement; and (4) the sanction of loss of 40 days of good conduct time was improper.  *See* Memorandum (Doc. No. 2) at 6-13.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that the Due Process Clause provides certain minimum protections for inmates facing the loss of good time credits as a disciplinary sanction.  The *Wolff* Court held that an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (discussing *Wolff*, 418 U.S. at 563-67).

In order to support the loss of good time credits, the decision of the prison officials need not comport with the requirement of proof beyond a reasonable doubt

applicable in a criminal trial.  Instead, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."  *Hill*, 472 U.S. at 455.  As the *Hill* Court explained, this standard of proof is not demanding because "[a]scertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.  Due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board," *id.* at 457, and a disciplinary finding can be upheld on even "meager" evidence, as long as "the record is not devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Id.*

  A. Some Evidence

Applicant first argues that his disciplinary conviction is unsupported by "some evidence".  Memorandum (Doc. No. 2) at 6.  He argues that to support a conviction for a Code 108 violation "of possessing a hazardous tool such as a 'cellular phone' . . . . [t]here must be 'some evidence' that supports a finding that the cellular phone is at a minimum a functional cellular phone."  *Id.*  He also argues that the evidence in this case is limited "only to the reporting officer's statement".  *Id.* at 8.

In accordance with Supreme Court precedent and federal regulations, as long as there is some evidence to support the DHO's determination, the decision will stand. *See Hill*, 472 U.S. at 455 ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if there was some evidence from which the conclusion of

the administrative tribunal could be deduced.") (citations and internal quotation marks omitted); 28 C.F.R. § 541.15.

The Court's review of the administrative record reveals that in finding Applicant guilty of a Code 108 violation, the DHO relied first upon the written statement of the reporting correctional officer. *See* Response at Attach. 2, p. 3. The officer stated that on October 18, 2010, at 12:10 p.m., he conducted a search of cell 240, which was assigned to Applicant. *Id.* During the search, he found four pieces of a black Samsung cellular telephone in the toilet, in addition to a telephone charger. *Id.* The information provided in a written incident report, standing alone, can satisfy the "some evidence" standard. *Hill*, 472 U.S. at 456 (prison guard's copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001) (information contained in an incident report is "some evidence" of inmate's guilt). Although Applicant questions the credibility of these statements, the Court's function here is not to re-litigate issues of credibility decided by the DHO. *See Hill*, 472 U.S. at 455-56.

The DHO also relied on Applicant's "Quarters History Assignment" which revealed that Applicant was moved to cell 240 on October 17, 2010, at 10:51pm. *Id.* The DHO explained that the difference in time between when Applicant was assigned to cell 240, and when search was conducted of his cell (approximately twelve hours later), was "a sufficient amount of time for the inmate to discover major parts of a cell phone floating in his toilet which didn't belong to him." *Id.* The DHO also relied on the statement of the other inmate assigned to cell 240, who denied that the cell phone

the administrative tribunal could be deduced.") (citations and internal quotation marks omitted); 28 C.F.R. § 541.15.

The Court's review of the administrative record reveals that in finding Applicant guilty of a Code 108 violation, the DHO relied first upon the written statement of the reporting correctional officer. *See* Response at Attach. 2, p. 3. The officer stated that on October 18, 2010, at 12:10 p.m., he conducted a search of cell 240, which was assigned to Applicant. *Id.* During the search, he found four pieces of a black Samsung cellular telephone in the toilet, in addition to a telephone charger. *Id.* The information provided in a written incident report, standing alone, can satisfy the "some evidence" standard. *Hill*, 472 U.S. at 456 (prison guard's copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001) (information contained in an incident report is "some evidence" of inmate's guilt). Although Applicant questions the credibility of these statements, the Court's function here is not to re-litigate issues of credibility decided by the DHO. *See Hill*, 472 U.S. at 455-56.

The DHO also relied on Applicant's "Quarters History Assignment" which revealed that Applicant was moved to cell 240 on October 17, 2010, at 10:51pm. *Id.* The DHO explained that the difference in time between when Applicant was assigned to cell 240, and when search was conducted of his cell (approximately twelve hours later), was "a sufficient amount of time for the inmate to discover major parts of a cell phone floating in his toilet which didn't belong to him." *Id.* The DHO also relied on the statement of the other inmate assigned to cell 240, who denied that the cell phone

belonged to him. *Id.* In addition, the DHO noted that Applicant did not provide any other evidence to explain how the cell phone ended up in his toilet. *Id.* Finally, the DHO provided his reasons for imposition of the disciplinary sanction, stating "a cell phone within a secure institution could allow an inmate to make unmonitored telephone calls to effectuate escape plans." *Id.* Based upon all of the above, the DHO found that the greater weight of the evidence supported a finding of guilt. *Id.*

Considering the evidence in the record, the Court finds that the DHO's decision meets the requirements of due process because it was supported by the written statement of a correctional officer, Applicant's Quarters History Assignment, and the statement of another inmate. *See Hill*, 472 U.S. at 456.

Applicant challenges the sufficiency of the evidence by arguing that the DHO was required to demonstrate that the cell phone was functional. However, Applicant has not pointed to any case law that would support a requirement that the DHO prove or demonstrate that the cellular phone was functional at the time that it was discovered. Indeed, if this were the case, it is easy to imagine a situation where an inmate could simply break his cellular phone anytime he was in danger of discovery and thereby avoid disciplinary charges, even though the cell phone was previously functional. Applicant has simply failed to allege any facts that would indicate that the disciplinary hearings and resulting sanctions were contrary in any way to the requirements set forth by the *Wolff* standard. Here, the DHO articulated clear, distinct evidence for finding Applicant guilty, and it cannot be said that the decision is not supported by "some evidence." *See Hill*, 472 U.S. at 455. Therefore, Applicant's conviction and loss of good time credits must stand.

B.     False Evidence

Second, Applicant argues that his due process rights were violated because the DHO relied on "false evidence". Memorandum (Doc. No. 2) at 9. Although this claim is confusing, Applicant apparently objects because the DHO's report stated that the telephone was discovered "floating" in Applicant's toilet. *Id.* at 10. Applicant asserts, however, that the incident report "is void of any statement by the officer that the telephone was floating in the toilet." *Id.* at 11. Applicant further argues that he was only placed in the cell twelve hours before the telephone was discovered. Therefore, Applicant appears to argue that because the telephone was not actually "floating" in the toilet, but was lying at the bottom, he could not be faulted for failing to discover the telephone prior to the October 18, 2010 search.

Regardless of whether the telephone was "floating" in the toilet, or was lying at the bottom, BOP regulations and policy instruct inmates that it is their responsibility to keep their areas free of contraband. *See* 28 C.F.R. § 541.12, P.S. 5270.07, *Inmate Discipline and Special Housing Unit*, Chap. 3 at p. 1. Therefore, upon his transfer to the new cell on October 17, 2010, Applicant was required by BOP regulations and policy to ensure that his new area did not contain any contraband. Applicant failed to comply with this requirement. Further, the position of the telephone in the toilet does not appear to have been relevant to the DHO's decision. Accordingly, Applicant's argument that the DHO allegedly relied on "false evidence" is unavailing and Applicant is not entitled to relief on this claim.

C.     Failure to Consider Evidence

Applicant argues that the DHO failed to consider a statement he made during the disciplinary hearing. Memorandum (Doc. No. 2) at 12. He asserts that at the hearing, he provided the following statement: "because the phone was broken, and it was in pieces, how could it be a 108?" *Id.* He alleges that the DHO "suppressed" this statement because it is not contained in the DHO report. *Id.*

First, contrary to Applicant's assertion, it is apparent in the record that the DHO considered Applicant's statement describing his version of the facts. *See* Response at Attach. 2, p. 1. Beyond that, Applicant has failed to establish that his argument that the phone was broken was pertinent to the outcome of the proceeding. As discussed previously, Code 108 does not require the DHO to prove or document that the cell phone was in working condition at the time that it was discovered. Because Applicant has not demonstrated that the DHO's alleged refusal to consider this argument was pertinent to the outcome of the disciplinary hearing, the Court concludes that this claim is also without merit.

D.   Improper Sanction

Finally, Applicant asserts that the DHO's written report did not mention the sanction of 40 days loss of non-vested good conduct time. Memorandum (Doc. No. 2) at 13. Therefore, he alleges that he was "erroneously forfeited" the 40 days of non-vested good-conduct time. *Id.*

The affidavit of Jon M. Aducci, the DHO who presided over Applicant's disciplinary hearing, is attached to the Answer. *See* Answer at Attach. 1. In the affidavit, Mr. Aducci explains the following with respect to the discrepancy in the DHO report:

> On November 1, 2011, I was contacted by a Correctional Systems Officer at USP Florence indicating that Applicant was complaining that non-vested good conduct time should not have been taken as a result of his Code 108 offense. Upon receiving this information, I located the first amended DHO report (Attachment 4) and noticed that there was a discrepancy with the sanctions on the DHO Report and those in Sentry (which reflected the accurate sanctions to be imposed).
>
> On November 1, 2011, I prepared a second amended DHO Report and issued it to the USP Florence Correctional Systems Officer via electronic email. *See* Attachment 5, Second Amended DHO Report signed Nov. 1, 2011. This version indicates the appropriate sanctions to be imposed: 30 days disciplinary segregation, six (6) months loss of commissary privileges, one year loss of telephone privileges, 40 days disallowance of good conduct time, and 40 days forfeiture of non-vested good conduct time. On November 4, 2011, a copy of this DHO Report, including written findings and conclusions identical to the prior two (2) versions, were provided to Applicant. *Id.* Applicant was notified of his appeal rights through the Bureau's Administrative Remedy Program.

Answer at Attach. 1, p. 5.

The maximum penalties for a violation of BOP Code 108 include "[f]orfeit[ure of] earned statutory good time or non-vested good conduct time (up to 100%) . . . [and/or] [d]isallow[ance of] ordinarily between 50 and 75% (27-41 days) of good conduct time available for year." 28 C.F.R. § 541.13 tbl. 3. The DHO sentenced Applicant to 40 days forfeiture of non-vested good conduct time and 40 days disallowance of good conduct time. Therefore, the DHO's sentence is within the range specified by 28 C.F.R. § 541.13. Although Applicant argues that his administrative appeals were somehow prejudiced because the sanction of 40 days forfeiture of non-vested good conduct time was not included on the original DHO report, he does not argue, and there is no indication in the record, that the result of his administrative appeal would have been different. Therefore, because the DHO's sentence is permissible under 28 C.F.R. § 541.13, Applicant is not entitled to relief on this claim.

**WHEREFORE**, for the foregoing reasons, the Court respectfully **RECOMMENDS** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1; November 16, 2011) be **DENIED** and that the case be **DISMISSED** with prejudice.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir.1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir.1996).

Dated this 2nd day of April, 2012, at Denver, Colorado.

BY THE COURT:

s/Michael J. Watanabe

MICHAEL J. WATANABE
United States Magistrate Judge